IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOMAS ALFREDO MOLINA OCHOA,

      Petitioner,

v.                                                                                  Case No. 1:25-cv-00881-JB-LF

KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland
Security; PAMELA BONDI, in her official
capacity as Attorney General of the United
States; TODD LYONS, in his official
capacity as Acting Director and Senior
Official Performing the Duties of the
Director of U.S. Immigration and Customs
Enforcement; MARY DE ANDA-YBARRA,
in her official capacity as Field
Office Director of the El Paso Field Office
of U.S. Immigration and Customs
Enforcement, Enforcement and Removal
Operations; GEORGE DEDOS, in his
official capacity as Warden of the Cibola County
Correctional Center;

      Respondents.

## **PROPOSED FINDINGS & RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2241 (Doc. 1) and Respondents' motion to dismiss that petition (Doc. 5).  United

States District Judge James Browning referred this case to me under 28 U.S.C. §§ 636(b)(1)(B),

(b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990) "to conduct

hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required

to recommend to the Court an ultimate disposition of the case."  Doc. 3 at 1.  Having reviewed

the briefings and the law, and having heard the argument of counsel, I recommend that the Court

deny Respondents' motion to dismiss and grant in part and deny in part the petition for a writ of habeas corpus.

## BACKGROUND

Petitioner Tomas Alfredo Molina Ochoa states in his verified petition that he came to the United States from Guatemala nineteen years ago, and that he has worked as a gardener and landscaper since entering the country.[1]  Doc. 1 ¶ 1.  In late June 2025,[2] Petitioner was performing gardening work on private property in Sylmar, California, when an unmarked vehicle pulled up to the property and he was taken into immigration custody.  *Id.* ¶ 2.  Petitioner was charged with entering the United States without inspection under 8 U.S.C. § 1182(a)(6)(A)(i), served with an arrest warrant, and placed in removal proceedings.  *Id.*

An immigration judge ("IJ") in the Otero Immigration Court determined Petitioner to be statutorily ineligible for a bond hearing and subject to mandatory detention.  *Id.* ¶¶ 3–5.  The IJ made no factual findings that Petitioner is a flight risk or a danger, and instead concluded that Petitioner is an "applicant" who is "seeking admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  *Id.* ¶ 5.  Petitioner asserts that he filed a pro se Board of Immigration Appeals ("BIA") Notice of Appeal of the IJ's decision on August 22, 2025, *id.* ¶ 21, though Respondents dispute that this notice was ever filed, Doc. 5 at 3.

Petitioner has remained in detention since his apprehension in June 2025, over four months ago.  During that time, he has remained separated from his family, his work, and the broader community.  Doc. 1 ¶ 30.  In support of his request for bond, Petitioner submitted

---

[1] Respondents acknowledged at the hearing that they had no evidence that contradicts the factual statements in the petition regarding Petitioner's background.  Doc. 20 ¶ III(b)(i).

[2] The petition does not provide an exact date, but Respondents assert that the date is June 24, 2025.  Doc. 5 at 3.

statements of support from his Lawful Permanent Resident (LPR) family members and his

clients to the IJ. *Id.* ¶ 28. Petitioner also included a letter from his mother's primary doctor

referencing his LPR mother's history of cancer. *Id.* ¶ 30. There is no indication that the IJ

considered any of these materials. Further, Petitioner asserts that staff at the Cibola County

Correctional Center, where he is detained, have not always properly administered the daily

medication he needs to manage his diabetes, resulting in significant, painful health effects. *Id.*

Petitioner filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on

September 11, 2025, to contest the IJ's determination that he is subject to mandatory detention,

requesting that the Court (1) declare that Petitioner's continued detention is unlawful and

unconstitutional and order his immediate release from ICE custody, or (2) conduct an immediate,

constitutionally adequate individualized custody determination. Doc. 1 at 19. Petitioner also

requests that the Court enjoin his transfer outside of the District of New Mexico during the

pendency of the case, and that the Court award him costs and reasonable attorney's fees pursuant

to the Equal Access to Justice Act, 28 U.S.C. § 2412. *Id.*

On September 23, 2025, the Court imposed a briefing schedule that conformed with 28

U.S.C. § 2243.[3] Doc. 4. Respondents were ordered to respond to the petition and show good

cause why it should not be granted within three days of receipt of service, though they were

permitted to move for additional time not to exceed twenty days, and Petitioner's reply to

Respondents' answer was due three days after Respondents filed their response absent good

cause. *Id.*

---

[3] Section 2243 of title 28, United States Code, requires a writ or order to show cause to "be
returned within three days unless for good cause additional time, not exceeding twenty days, is
allowed." Once the writ or order is returned, "a day shall be set for hearing, not more than five
days after the return unless for good cause additional time is allowed." *Id.*

On October 14, 2025, the U.S. Attorney's Office responded on behalf of Kristi Noem, Pamela Bondi, Toddy Lyons, and Mary De Anda-Ybarra ("Federal Respondents") with a motion to dismiss the petition (Doc. 5). Petitioner filed proofs of service on October 17, 2025. *See* Doc. 10; Doc. 11. Counsel for Respondent George Dedos, the Warden of the Cibola County Correctional Center, appeared on October 21. *See* Doc. 12. Federal Respondents stated that "all arguments made on behalf of the [Federal Respondents] apply with equal force to Warden Dedos, as he is detaining the Petitioner at the request of the United States," Doc. 5 at 1 n.1, and Warden Dedos joined Federal Respondents' Motion to Dismiss, Doc. 14 at 1.[4] Petitioner timely responded to Respondents' motion on October 24, 2025. Doc. 13.

I held a hearing on Respondents' motion on November 3, 2025. Counsel for all parties appeared and presented arguments. *See* Doc. 20. I took the matter under advisement, but ordered the parties to keep me apprised of any developments in Petitioner's underlying immigration case. Doc. 15.

## THE PARTIES' LEGAL ARGUMENTS

### I.     Petitioner's Argument for a Writ of Habeas Corpus

Petitioner contests only the determination by the IJ that he is statutorily ineligible for a bond hearing, arguing that the failure to hold a bond hearing violates the Immigration and Nationality Act ("INA") and his Fifth Amendment right to due process. Doc. 1 ¶¶ 8, 56–64. Petitioner argues that he should have been found subject to a provision of the INA that generally entitles individuals taken into immigration custody pending a decision to a bond hearing at the outset of their detention, 8 U.S.C. § 1226(a). *Id.* ¶ 32. Petitioner asserts that the government has

---

[4] Because Warden Dedos joined the motion, I will refer to it as Respondents' motion rather than Federal Respondents' motion throughout.

a decades-long practice of applying § 1226(a) to individuals who, like Petitioner, have been living in the United States and are charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i).  *Id.*  However, the IJ instead found Petitioner subject to another provision of the INA, 8 U.S.C. § 1225(b)(2)(A), which requires mandatory detention of "aliens seeking admission."  *Id.* ¶¶ 5, 33.  Despite Petitioner's uncontested assertions that he has been living in the United States for nineteen years, *id.* ¶ 1, the IJ determined him to be an "Applicant seeking Admission" to the country.  Doc. 1 ¶¶ 5, 29; Doc. 5 at 3.  Petitioner argues that the IJ erred and that he is entitled to a bond hearing under § 1226(a).  Doc. 1 ¶¶ 57–60.

Petitioner asks the Court either to immediately release him, or to order a § 1226(a) bond hearing where the government bears the burden of proving that Petitioner's continued detention is justified.  Doc. 1 at 19.  Petitioner also asks the Court to prohibit his transfer outside of the District of New Mexico during the pendency of the case, and to award him costs and reasonable attorneys' fees pursuant to the Equal Access to Justice Act.  *Id.*

## II.    Respondents' Motion to Dismiss

Respondents answered the petition with a Motion to Dismiss, challenging the court's jurisdiction over the petition and also attacking the petition's merits.  Doc. 5.  Respondents argue that the petition should be dismissed (1) for lack of subject matter jurisdiction; (2) because Respondents have not violated Petitioner's limited due process rights; and (3) that even if Petitioner were entitled to a § 1226(a) bond hearing, he still failed to exhaust his administrative remedies, is not entitled to have the burden of proof shifted to the government, and that immediate release is not an appropriate remedy.

Regarding the challenge to subject matter jurisdiction, Respondents argue that both statutory and Tenth Circuit authority limit district court review of § 1225(b) orders.  Doc. 5 at 13.

Because the IJ found Petitioner subject to § 1225(b), and because Petitioner is not challenging the order on one of the statutorily permitted bases—whether Petitioner is an alien, whether Petitioner was ordered removed under § 1225(b), or whether Petitioner has some sort of lawful status in the country—Respondents argue that the Court lacks subject matter jurisdiction over the petition. *Id.* Petitioner responded that the jurisdictional limitation applies only to removal orders, and that because Petitioner is seeking review of his detention rather than challenging an order of removal, the Court retains jurisdiction over the petition. Doc. 13 at 6. Petitioner also argues that the Court has jurisdiction over the petition pursuant to the Suspension Clause of the U.S. Constitution. *Id.* at 5–6 (citing U.S. Const. art. I, § 9, cl. 2).

Respondents next argue that, even if the Court did have jurisdiction over the petition, Petitioner's limited due process rights have been met under § 1225. Doc. 5 at 14. They argue that because Petitioner has been classified as an arriving alien under § 1225, he has no due process rights beyond those afforded by statute, and none of those rights have been violated. *Id.* Respondents contest Petitioner's contention that he faces prolonged detention, referencing the merits hearing held on November 5, 2025, in Petitioner's underlying immigration case during the pendency of this case. *Id.* at 14–15. Petitioner responded by disputing Respondents' conclusion that he is an arriving alien subject to mandatory detention under § 1225. Doc. 13 at 9–11. Petitioner cites to several recent district court cases that consistently determined that "noncitizens who previously entered without inspection and were apprehended in the interior of the country," like Petitioner, are covered by § 1226 rather than § 1225. *Id.* at 10–11. Petitioner also contends that the outcome of the merits hearing in his underlying immigration case will not change his detention because both he and the government have the right to appeal an adverse decision and

presumably will do so.  *Id.* at 21.  Petitioner will remain detained during that appeals process absent this Court's intervention.  *Id.*

Finally, Respondents argue that even if the Court concludes that Petitioner should have been subjected to § 1226(a) rather than § 1225, the Petitioner still should be denied a bond hearing.  First, Respondents argue that Petitioner failed to exhaust his administrative remedies by not timely appealing the IJ's § 1225(b) determination, and that the futility exception to administrative exhaustion recognized by the Tenth Circuit does not apply here because Petitioner's appeal period expired before the BIA published an opinion that would have made the appeal futile.  Doc. 5 at 15–16.  Petitioner responds that administrative exhaustion is not mandatory, especially where appealing to the BIA would have been futile.  Doc. 13 at 22–23.  Second, Respondents argue that if the Court orders a § 1226(a) bond hearing for Petitioner, the burden of proof at that hearing should not shift to the government because Petitioner has not been subject to prolonged detention.  Doc. 5 at 16–17.  Petitioner responded that the continued violation of Petitioner's due process rights justifies shifting the burden to the government to prove that Petitioner is a flight risk or a danger.  Doc. 13 at 9–11, 21–22.  Third, Respondents argue that Petitioner's request for immediate release from custody is an inappropriate remedy.  Doc. 5 at 17–18.  Petitioner did not directly address this argument in his response, but counsel for Petitioner argued at the hearing that Petitioner's immediate release would protect Petitioner from the risk of being unlawfully removed from the country before this case has been resolved.  Doc. 20 ¶ VII.

## ANALYSIS

### I.    This Court Has Subject Matter Jurisdiction Over the Petition.

A.  <u>The Court Retains Jurisdiction Over the Petition Because it Challenges Petitioner's Detention Rather than an Order of Removal</u>.

Federal courts possess jurisdiction over a matter only as authorized by the U.S. Constitution and statute.  *Gunn v. Minton*, 568 U.S. 251, 256 (2013).  Section 2241 of title 28, United States Code, grants district courts the authority to grant writs of habeas corpus, and district courts may entertain petitions pursuant to § 2241 in relation to immigration cases. *Ochieng v. Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008) (noting that district courts are the appropriate forum for a noncitizen to bring § 2241 challenges to mandatory detention in the first instance).  However, the Tenth Circuit has clarified that district courts' habeas jurisdiction is limited regarding orders of removal.  *See Thoung v. United States*, 913 F.3d 999, 1001–02 (10th Cir. 2019) ("[T]he REAL ID Act imposes substantial limitations on judicial review, including habeas review, of final orders of removal.").  Habeas petitions challenging an order of removal must be filed in a circuit court of appeals, *id.*, and even then, any challenge is limited to certain grounds enumerated by statute, *see Vaupel v. Ortiz*, 244 F. App'x 892, 894–96 (10th Cir. 2007). Nonetheless, the Supreme Court has recognized that district courts retain jurisdiction to consider habeas petitions that challenge determinations by an IJ other than orders of removal.  *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018) (reviewing a habeas petition after clarifying that "respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined").  Accordingly, the Tenth Circuit has found that district courts have jurisdiction to hear a noncitizen's challenge to mandatory detention because that determination is distinct from an order of removal.  *Ochieng*,

520 F.3d at 1115 ("It appears that subsequently-enacted provisions of the REAL ID Act limiting habeas relief . . . do not apply in these circumstances, as [the petitioner] would not be seeking review of an order of removal, but review of his detention."); *see also* 8 C.F.R. § 1003.19(d) (2025) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond . . . shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.").

Indeed, several courts in this district, like district courts across the country, have found subject matter jurisdiction over petitions challenging determinations that a petitioner was statutorily ineligible for bond under § 1226(a). *See Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (granting petitioner a writ of habeas corpus challenging petitioner's classification under § 1225 instead of § 1226(a)); *Pastrana-Saigado v. Lyons*, No. 2:25-cv-00950-MLG-LF, Doc. 24 at 1–2 (D.N.M. Oct. 24, 2025) (holding—"[l]ike the overwhelming majority of courts"—that § 1226(a) governed the petitioner's detention and that the petitioner was entitled to a bond hearing); *Garcia Domingo v. Castro*, No. 1:25-cv-00979-DHU-GJF, — F. Supp. 3d —, 2025 WL 2941217, at *4–5 (D.N.M. Oct. 15, 2025) (finding that the petitioner had established a substantial likelihood of success on the merits of his claim that he had been erroneously classified as an "applicant for admission" subject to § 1225); *Cortez-Gonzalez v. Noem*, No. 2:25-cv-00985-MLG-KK, Doc. 16 at 1–2 (D.N.M. Oct. 24, 2025) (ordering respondents to schedule an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)); *see also, e.g.*, *Bolante v. Achim*, 457 F. Supp. 2d 898, 902 (E.D. Wis. 2006) ("Although Congress has stripped district courts of habeas jurisdiction to consider most immigration issues, district courts retain jurisdiction to review detention unrelated to a removal proceeding, and therefore not subject to circuit court review under INA § 242.");

*Martinez-Elvir v. Olson*, No. 3:25-CV-589-CHB, — F. Supp. 3d —, 2025 WL 3006772, at *3 (W.D. Ky. 2025) ("[T]he Supreme Court has recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings.").

I recommend that the Court follow Supreme Court and Tenth Circuit precedent and find subject matter jurisdiction over the petition. Respondents argue that this Court lacks subject matter jurisdiction because Petitioner is challenging a § 1225(b)(1) determination and is not challenging the determination on the grounds enumerated by statute. Doc. 5 at 13–14. But Petitioner is not challenging a § 1225(b)(1) determination—the IJ order specifically cites § 1225(b)(2)(A), not § 1225(b)(1).[5] *See* Doc. 5 at 3. And regardless of whether the order was issued pursuant to § 1225(b)(1) or (b)(2), Petitioner correctly notes that he is not challenging a removal order—no removal order had been issued when the petition was filed—but rather his continued detention without a bond hearing. Doc. 13 at 1, 6. The jurisdictional limits that Respondents cite in *Vaupel*, 244 F. App'x at 894–96, and that the Tenth Circuit discussed in *Thoung*, 913 F.3d at 1001–02, therefore do not apply here. *See Ochieng*, 520 F.3d at 1115. *Vaupel*, which Respondents rely on, supports a finding of subject matter jurisdiction here, as the Tenth Circuit in that case addressed the petitioner's challenges to his continued detention even after holding that it lacked jurisdiction over the removal order itself. *See* 244 F. App'x at 896. The Supreme Court's opinion in *Jennings* likewise is consistent with Petitioner's argument, as the Court there proceeded to analyze the petitioners' detention without bond after noting that the petitioners "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging

---

[5] The IJ's order refers specifically to "Sec 235(b)(2)(A) of the Immigration and Nationality Act," which is 8 U.S.C. § 1225(b)(2)(A). *See* Laken Riley Act, Pub. L. No. 119-1, § 3, 139 Stat. 3, 3 (2025).

any part of the process by which their removability will be determined." 583 U.S. at 294–95.

Finding subject matter jurisdiction over Petitioner's challenge to his detention without bond

therefore conforms with Supreme Court precedent, Tenth Circuit precedent, prior decisions of

courts in this district, and courts across the country. Petitioner raised the Suspension Clause as

an alternative ground for jurisdiction, Doc. 13 at 23–24, but this Court's jurisdiction over the

petition is firmly established without resorting to the Suspension Clause.

   B.  <u>The Court Retains Jurisdiction Over This Case Until Petitioner's Order of Removal</u>
       <u>Becomes Administratively Final</u>.

       Before moving on from subject matter jurisdiction, I must address one further

complication in this case. As discussed above, Petitioner is not challenging a removal order and

no removal order had been issued when the petition was filed, but an IJ issued an order for

Petitioner's removal on November 5, 2025. Doc. 17 at 1; Doc. 17-1 at 3. Anticipating this issue,

the Court ordered the parties to address at the November 3 hearing how a merits hearing in

Petitioner's underlying immigration case may affect this case. Doc. 8 at 2. While Petitioner is

challenging his continued detention pursuant to § 1225(b)(2)(A), after an order of removal is

final, the authority governing a noncitizen's detention shifts to another statutory provision, 8

U.S.C. § 1231(a)(2). The question thus becomes determining the point at which Petitioner's

challenge to pre-removal detention becomes moot now that an order of removal has been issued.

       While Petitioner may only challenge his order of removal in the Tenth Circuit Court of

Appeals, *see Thoung*, 913 F.3d 1001–02, Petitioner's challenge to his pre-removal detention

survives until his removal order becomes final. Section 1231(a)(2)(A) of title 8, United States

Code, provides that, after a noncitizen is ordered removed, "[d]uring the removal period, the

Attorney General shall detain the alien." The statute clarifies that the

       removal period begins on the latest of the following: (i) The date the order of
       removal becomes administratively final. (ii) If the removal order is judicially

11

> reviewed and if a court orders a stay of the removal of the alien, the date of the
> court's final order.  (iii) If the alien is detained or confined (except under an
> immigration process), the date the alien is released from detention or
> confinement.

8 U.S.C. § 1231(a)(1)(B).  The Supreme Court has concluded that a removal order is

administratively final for purposes of detention "once the BIA has reviewed the order (or the

time for seeking the BIA's review has expired)." *Johnson v. Guzman Chavez*, 594 U.S. 523,

534–35 (2021).  Another district court in the Tenth Circuit handled a similar issue, considering a

petitioner's habeas challenge to mandatory detention after a final order of removal was entered.

*See Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188–90 (D. Colo. 2014).  The petitioner in

*Carbajal* challenged his pre-removal detainment, but the court found that the challenge became

moot when the BIA affirmed petitioner's removal order: "On that date, the Attorney General's

authority to detain Applicant shifted to 8 U.S.C. § 1231(a)(2)." *Id.* at 1189.

At the November 3 hearing, the parties agreed that the Court would retain jurisdiction

over Petitioner's challenge until any order of removal becomes final.  Doc. 20 ¶ XI(a).  Applying

the Supreme Court's definition of "administratively final," 594 U.S. at 534–35, and referencing

the guidance provided by *Carbajal*, 43 F. Supp. 3d at 1188–90, I recommend that this Court not

find the petition moot until the Petitioner's time to appeal the removal order has expired, or if

Petitioner timely appeals, the BIA issues a decision on that appeal.

Since the hearing, the parties provided notice to the Court that Petitioner is appealing the

order of removal.  Doc. 19 at 1; Doc. 19-1 at 2–6.  Had Petitioner not appealed, he would have

had thirty days from the date of the order of removal before that order became final.  *See* 8

C.F.R. § 1240.15 (2025) ("An appeal shall be filed within 30 calendar days after the mailing of a

written decision, the stating of an oral decision, or the service of a summary decision.").  Now

that Petitioner is appealing the order to the BIA, that order will not become final until "the BIA

has reviewed the order." *Johnson*, 594 U.S at 534. Petitioner will remain detained pending the appeal absent a bond hearing. Doc. 19 at 1; Doc. 19-3 at 2. At the November 3 hearing, counsel for Petitioner, who regularly practices immigration law, indicated that Petitioner likely would be detained another six or seven months before his case is heard by the BIA.[6] Doc. 20 ¶¶ VI(b)(i), VIII.

## II.    Violations of Petitioner's Due Process Rights

Respondents next argue that, even if the Court finds subject matter jurisdiction over the petition, Petitioner was correctly classified under § 1225(b) and that all of the rights provided by that statute were met. Doc. 5 at 14–15. Petitioner argues that the IJ's determination that he is subject to § 1225(b)(2)(A) is erroneous, and that he should have been found subject to § 1226(a) and thus entitled to a bond hearing. Doc. 1 ¶¶ 55–64.

Two relevant statutory provisions of the INA govern whether an individual is eligible for a bond hearing or is subject to mandatory detention. Section 1226(a) of title 8, United States Code, provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." By contrast, 8 U.S.C. § 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is

---

[6] There seems to be no definitive information about how long an appeal to the BIA may take. However, the Executive Office for Immigration Review's statistics and statements about the appeals process appear to corroborate Petitioner's contention that his case will not be heard anytime soon. *See* Exec. Off. for Immigr. Rev., Adjudication Statistics (July 31, 2025), https://www.justice.gov/eoir/media/1344986/dl?inline (showing that, as of the third quarter of the 2025 fiscal year, 186,473 appeals are pending before the BIA); Reducing the Size of the Board of Immigration Appeals, 90 Fed. Reg. 15525, 15526 (Apr. 14, 2025) (to be codified at 8 C.F.R. pt. 1003) (noting that "the number of cases completed annually by Board members has exceeded the total number completed in 2015 only three years since then, and the current projection for Fiscal Year 2025 is that completions will be less than in Fiscal Year 2015").

not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." Relevant to this case is thus who can be considered an "applicant for admission" or "seeking admission." 8 U.S.C. § 1225(b)(2)(A). The Supreme Court discussed both statutory sections and the classes of individuals they apply to in *Jennings v. Rodriguez*, 583 U.S. 281 (U.S. 2018). The Court explained that "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id.* at 297. The Court then discussed § 1226, explaining that "§ 1226 applies to aliens already present in the United States." *Id.* at 303. The Court further provided that § "1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also "permits the Attorney General to release those aliens on bond." *Id.*

Courts in this district accordingly have granted relief to noncitizens alleging a presence in the United States for years before their arrest, finding that § 1226(a) applied to their detention rather than § 1225(b)(2). *See Salazar*, 2025 WL 2676729, at *4 (finding that a petitioner who has lived in the United States since the 1980s is not "seeking admission" and is subject to § 1226(a)); *Garcia Domingo*, 2025 WL 2941217, at *4 (finding that a petitioner who had been present in the United States for nine years was likely to succeed on the merits of his claim that he had been erroneously classified as an "applicant for admission"); *Pastrana-Saigado*, No. 2:25-cv-00950-MLG-LF, Doc. 17 at 1, Doc. 24 at 1–2 (finding that a petitioner who had been in the United States for over twenty-five years was entitled to a bond hearing pursuant to § 1226); *Cortez-Gonzalez*, No. 2:25-cv-00985-MLG-KK, Doc. 2 at 8, Doc. 16 at 1–2 (ordering a § 1226(a) bond hearing for a petitioner who alleged a presence in the United States since 2005). Federal district courts across the country have also concluded that § 1226 applies in these

circumstances.  *See, e.g.*, *Buenrostro-Mendez v. Bondi*, No. H-25-3726, 2025 WL 2886346, at *1, *3 (S.D. Tex. Oct. 7, 2025) (concluding "that § 1226, not § 1225, applies to [a petitioner's] detention" after the petitioner had lived in the U.S. unlawfully for over a decade); *Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *6 (C.D. Cal. Sept. 8, 2025) (concluding that § 1226(a) rather than § 1225(b)(2) applies "to individuals who, like petitioners, have been residing in the United States and did not apply for admission or a change of status"); *Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, — F. Supp. 3d —, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025) (concluding that § 1226 applies to noncitizens who are arrested on a warrant while residing in the United States); *Kostak v. Trump*, No. 3:25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025) ("Respondents' position that Section 1225 applies 'because Petitioner is present in the United States without being admitted' is contrary to the Supreme Court's analysis of the application of 1225 to arriving aliens."); *Malets v. Horton*, No. 4:20-cv-01041-MHH-SGC, 2021 WL 4197594, at *4 (N.D. Ala. 2021) ("In other words, § 1226 authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings.") (internal quotations omitted)); *Martinez*-Elvir, 2025 WL 3006772, at *8 ("Based on the Supreme Court's reading of [§ 1226 and § 1225], then, § 1226 also appears to apply to Petitioner since he was detained not while arriving to the country, but instead while already in the United States.") (internal quotations omitted)); *Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *7 (D. Colo. Oct. 22, 2025) (concluding that a petitioner present in the United States since 2006 "was not seeking lawful entry into the United States at the time he was detained—he was already here" and "is not subject to § 1225(b)(2)(A)'s mandatory detention provision").

Petitioner argues that he is not an "applicant for admission" pursuant to § 1225(b) because he has been present in the United States for nineteen years before his detainment.  Doc.

1 ¶¶  1, 54–55.  Respondents do not directly contest this allegation, simply stating that Petitioner "entered the United States at an unknown place and time without having been admitted or paroled."  Doc. 5 at 3.  But Petitioner alleges that he was arrested in "Sylmar, CA, far from the border and approximately 162 miles from the San Ysidro, CA port of entry."  Doc. 1 ¶ 2. Counsel for Federal Respondents stated at the November 3 hearing that Respondents possessed no information regarding how long Petitioner has been in the United States.  Doc. 20 ¶ III(b)(i). Petitioner's allegation that he was apprehended after being in the United States for nineteen years and Respondents' failure to show otherwise at this stage in the proceedings is consistent with the conclusion that he is an "alien[] already present in the United States" subject to § 1226(a). *Jennings*, 583 U.S. at 303.  Another court in this district previously found that § 1226(a) likely applies to noncitizens who have been present in the United States for less time than Petitioner alleges.  *See Garcia Domingo*, 2025 WL 2941217, at *4 (finding that a petitioner who had been present in the United States for nine years was likely to succeed on the merits of his claim that he had been erroneously classified as an "applicant for admission").

Respondents' briefing is contradictory on this issue.  On the one hand, they state—like the Supreme Court did in *Jennings*—that § 1226 applies to "noncitizens who previously entered the United States" and that § 1225 applies to "noncitizen arriving aliens seeking an initial entry." Doc. 5 at 14; *cf. Jennings*, 583 U.S. at 297, 303.  On the other hand, they cite the BIA's reasoning in a recent decision, *In the Matter of Yajure Hurtado*, that "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an admission," and that "[t]o hold otherwise would lead to an incongruous result that rewards aliens who unlawfully enter the United States without inspection and subsequently evade apprehension for number of years."  Doc. 5 at 5 (quoting *Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025)

(internal quotations omitted)).  Respondents thus seem to be making the incongruous argument that the BIA was correct in determining that § 1226 should not apply to immigrants who previously entered the United States illegally, even while acknowledging that § 1226 applies to immigrants who previously entered the United States.  Respondents do not address the Supreme Court's statement in *Jennings* that "§ 1226 applies to aliens already present in the United States," 583 U.S. at 303.  At the November 3 hearing, counsel for Federal Respondents conceded that he was not aware of any court within the Tenth Circuit that has held that an alien who has resided in the country for more than a decade is an arriving alien.  Doc. 20 ¶ III(a)(ii).

A brief discussion of the BIA's decision in *Yajure Hurtado* is warranted.  In *Yajure Hurtado*, a citizen of Venezuela crossed into the United States without inspection in November 2022.  29 I&N Dec. at 216.  He was granted temporary protected status in 2024; that status expired on April 2, 2025, and he was apprehended by immigration officials days later.  *Id.* at 216–17.  He requested a bond hearing before an immigration judge, but the judge held that he had no jurisdiction to set bond.  *Id.* at 217.  The BIA considered whether the INA required noncitizens who entered the United States without admission or inspection but have been residing in the country for years to be subject to mandatory detention.  *Id.* at 220.  The BIA concluded that noncitizens apprehended after already entering the United States remain "applicants for admission" within the meaning of § 1225(b), because "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an admission," nor does "being arrested pursuant to a warrant and placed into removal proceedings."  *Id.* at 228 (internal quotations omitted).  The BIA reasoned that to hold otherwise would reward noncitizens for evading apprehension and punish noncitizens who present themselves at ports of entry.  *Id.*

Decisions of the BIA are persuasive, not binding, authority on the Court, and I recommend that the Court reject the holding of *Yajure Hurtado*. The Supreme Court recently directed district courts that they "must exercise independent judgment in determining the meaning of statutory provisions" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024); *see also Sampiao*, 2025 WL 2607924, at *8 n.11. For the reasons discussed above, the BIA's conclusion conflicts with the Supreme Court's reasoning in *Jennings* that § 1226 applies to noncitizens already residing in the United States. 583 U.S. at 303. While no decisions of courts in this district have yet explicitly rejected *Yajure Hurtado*, their previous determinations that noncitizens already present in the United States are subject to § 1226 necessarily implies a rejection of *Yajure Hurtado*. *See Garcia Domingo*, 2025 WL 2941217, at *4; *Pastrana-Saigado*, No. 2:25-cv-00950-MLG-LF, Doc. 24 at 1–2; *Cortez-Gonzalez*, No. 2:25-cv-00985-MLG-KK, Doc. 16 at 1–2. Indeed, numerous other district courts have explicitly rejected *Yajure Hurtado*. *See, e.g.*, *Martinez-Elvir*, 2025 WL 3006772, at *10 ("[T]he Court disagrees with the BIA's conclusion that a noncitizen's mere continued presence in the country alone means that they are 'seeking admission' when the noncitizen never attempted to obtain lawful status."); *Sampiao*, 2025 WL 2607924, at *8 n.11. Another district court explained:

> One of the only courts that has embraced this new legal interpretation of the INA is the Board of Immigration Appeals ("BIA") . . . In contrast, most of the federal district courts that have considered this issue determined that 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225 applies to noncitizens who have resided in the United States for years, do not have a removal order, and are detained by ICE.

*Gutierrez v. Baltasar*, No. 25-CV-2720-RMR, 2025 WL 2962908, at *1 (D. Colo. Oct. 17, 2025). That court noted that "[o]nly three of the thirty-eight decisions, none of which are from [the Tenth Circuit], citing the BIA's decision in *Yajure Hurtado*, have denied the relief requested by the noncitizen." *Id.* at *5.

18

For the reasons provided above, I recommend that the Court find that the IJ erred in treating Petitioner as "an applicant for admission" under § 1225(b)(2)(A) rather than finding that he is an alien who was arrested and issued a warrant and notice to appear under § 1226(a), and that Petitioner is entitled to a bond hearing pursuant to § 1226(a).

Respondents argue that Petitioner fails to establish a due process violation even if § 1226 applies, because "[h]is detention is not indefinite, and he is receiving process." Doc. 5 at 15. Respondents cite *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012). In *Mwangi*, the Tenth Circuit affirmed a district court's dismissal of a habeas petition alleging that the IJ's denial of bond violated his due process rights. *Id.* at 788. However, the petitioner in *Mwangi*, unlike Petitioner here, was determined to be subject to detention under § 1226(a) before he filed his habeas petition. *Id.* at 786–87. The petitioner in *Mwangi*, unlike Petitioner, was afforded a bond hearing pursuant to § 1226(a), and at that bond hearing the IJ denied bond after finding that the petitioner posed a danger to society. *Id.* at 786. The petitioner in *Mwangi* challenged the IJ's discretionary decision to deny him bond, and the Tenth Circuit affirmed the district court's finding that it lacked jurisdiction over the IJ's discretionary decision. *Id.* at 786–87. In this case, the IJ did not make any finding as to Petitioner's flight risk or danger and instead found that he lacked discretion to make any decision about bond. Doc. 1 ¶ 29. Petitioner is not challenging a discretionary decision by the IJ that he be denied bond because he poses a flight risk or a danger, but rather the IJ's determination that he is statutorily ineligible for bond. *Mwangi* is not applicable under these facts, and I recommend that the Court find that Petitioner's erroneous classification under § 1225(b)(2)(A) violated Petitioner's due process rights in that Petitioner was denied a bond hearing pursuant to § 1226(a).

III.     **Whether the Petition Should Be Dismissed Even if § 1226 Applies**

Finally, Respondents argue that, should the Court find that § 1226 applies rather than § 1225, the petition still should be denied because (A) Petitioner failed to exhaust his administrative remedies; (B) he is not entitled to shift the burden of proof to the government during the bond hearing, and (C) he is not entitled to immediate release.  Doc. 5 at 15–18.

A.     Exhaustion of Administrative Remedies

Respondents first argue that "prudential exhaustion requirements still bar [Petitioner's] claim because he failed to appeal the July 30, 2025, Order of the Immigration Judge denying his request for a custody redetermination."  Doc. 5 at 15.  While Petitioner claims he filed a notice of appeal on August 22, 2025, Doc. 1 ¶ 21, Respondents assert that there is no record of the appeal, Doc. 5 at 15.  Respondents also point out that the notice that Petitioner alleges he filed is largely incomplete and omits crucial information.  Doc. 5 at 15–16; *see* Doc. 1-3 at 2–4 (Pet'r's Ex. B).  Petitioner responded that exhaustion is not mandatory and that any appeal to the BIA would have been futile.  Doc. 13 at 8–9.

Petitioners ordinarily are required to exhaust administrative remedies before seeking a writ under § 2241, but exhaustion is not a statutory requirement.  *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310–11 (10th Cir. 2004) (Although appealing to the BIA normally is required to obtain subsequent judicial review, exhaustion deficiencies do not affect habeas jurisdiction over challenges to immigration detention.).  As another court within the Tenth Circuit recently explained in the context of an immigration habeas matter, "exhaustion is typically nonjurisdictional, and courts treat a rule as jurisdictional only if Congress clearly states that it is."  *Salvador F.-G. v. Noem*, No. 25-CV-

0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Ok. June 12, 2025) (citation modified) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–17 (2023)).  Section 1252(d)(1) of title 8, United States Code, does impose an administrative exhaustion requirement, but only as to challenges to final orders of removal and not to challenges of pre-removal detention.  *See id.*; *see also Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (explaining that administrative exhaustion applies to challenges of final orders of removal but not to challenges to preliminary custody or bond determinations).  Respondents concede that the "exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."  Doc. 5 at 12 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)).  And where exhaustion is not jurisdictional, "sound judicial discretion governs."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006); *see also L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) ("When Congress does not require exhaustion in the statute then the district court has discretion to decide if administrative exhaustion is required."); *Lopez-Arevelo v. Ripa*, No. EP-25cv337, 2025 WL 2691828 at *6 (W.D. Tex. Sept. 22, 2025) ("To wait, indefinitely, for a ruling on that appeal would be inappropriate because it would exacerbate [the petitioner's] alleged constitutional injury— detention without a bond hearing."); *Lopez v. Barr*, 458 F. Supp. 3d 171, 176 (W.D.N.Y. 20202) ("[C]ourts can excuse a failure to exhaust if the case presents a substantial constitutional question.").

Even if administrative exhaustion were required, the Tenth Circuit has recognized a "narrow exception to the exhaustion requirement" where "a petitioner can demonstrate that exhaustion is futile."  *Garza*, 596 F.3d at 1203–04; *see also Carr v. Saul*, 593 U.S. 83, 93 (2021) ("It makes little sense to require litigants to present claims to adjudicators who are powerless to

grant the relief requested.").  In *Garza*, for example, the Tenth Circuit rejected a petitioner's argument that appeal through the Bureau of Prisons ("BOP") was futile, reasoning that the BOP memoranda that the petitioner relied on did "not reflect any policy of categorical denial."  596 F.3d at 1204.

The BIA's decision in *Yajure Hurtado* appears to categorically deny relief to noncitizens who, like petitioner, are apprehended after residing in the country and who seek to challenge an immigration judge's determination that they are subject to mandatory detention under § 1225(b). *See Mosqueda*, 2025 WL 2591530, at *1, *7 (explaining that, in publishing *Hurtado*, the BIA "adopted the legal interpretation of the new DHS policy" that categorically "considers anyone arrested within the United States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) to be an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)"). Respondents focus on the timeliness of Petitioner's appeal, or lack thereof, rather than assert that the BIA would not have categorically denied him relief.  *See* Doc. 5 at 12–13, 15–16. Respondents argue that the exhaustion exemption should not apply because *Yajure Hurtado* was decided after Petitioner's period to appeal the immigration judge's determination had expired, but they cite no authority for their contention that the futility exemption only applies if a petitioner timely appeals.  *See* Doc. 5 at 16.  Respondents' argument also assumes that, had Petitioner timely appealed, the BIA would have rendered a decision in his case before it published *Yajure Hurtado*.  Assuming, for the sake of argument, that Petitioner did file a valid notice of appeal on August 22, 2025—an earlier date than when Petitioner's 30-day appeal period expired, Doc. 5 at 16—the BIA would have had only fourteen days to review his case before it published its opinion in *Yajure Hurtado*.  For reference, *Yajure Hurtado* was published 140 days after the challenged custody determination in that case and thirty-seven days after the

July 30, 2025, order that Petitioner is challenging.[7]  Respondents' argument also assumes that the BIA would have reached a different conclusion as to Petitioner's case than it did in *Yajure Hurtado*.  *See Mosqueda*, 2025 WL 2591530, at \*7 (explaining that the court was "not convinced that administrative review would allow BIA to correct its own mistakes" and that until "BIA no longer applies a policy that likely violates federal law, the circumstances do not present a need for requiring prudential exhaustion").

There may be circumstances where a petitioner's failure to timely appeal should foreclose application of the futility exception, but the facts here do not justify such a conclusion.  While the time for Petitioner to appeal the IJ's determination expired on August 30, 2025, *Yajure Hurtado* was published only six days later, and there is no reasonable possibility that the BIA would not have applied *Yajure Hurtado* to Petitioner's case.  I therefore recommend that the Court exercise its "sound judicial discretion," *see McCarthy*, 503 U.S. at 144, and find that Petitioner was not required to exhaust his administrative remedies before seeking habeas relief.  Even if administrative exhaustion were required, Petitioner has demonstrated that appealing the IJ's determination to the BIA would have been futile.

B.  <u>Whether Petitioner is Entitled to Burden Shifting at a § 1226(a) Bond Hearing</u>

Should the Court order a § 1226(a) bond hearing for Petitioner, the parties disagree about who should bear the burden of proof at that hearing.  Doc. 5 at 16–17; Doc. 13 at 19–22.  Petitioner argues that the government should be required to demonstrate that Petitioner's continued detention is warranted.  Doc. 13 at 18–22.  Respondents argue that noncitizens bear the burden of proof in bond hearings and that the burden only shifts to the government where

---

[7] The challenged order in *Yajure Hurtado* was issued on April 18, 2025, and the BIA published its opinion on September 5, 2025.  29 I&N Dec. at 216.

there is prolonged detention.  Doc. 5 at 16–17.  Respondents argue that Petitioner has "been detained for less than four months," which is not long enough to constitute prolonged detention. *Id.* at 17.

Section 1226(a) of title 8, United States Code, is silent as to which party bears the burden of proof at a bond hearing.  Section 1226(c)(4) states, in part, that a noncitizen may not be released unless he or she "satisfies the Attorney General" that the person is neither a flight risk nor a danger, but that subsection relates to the detention of noncitizens with criminal records. *See* § 1226(c)(1).  The implementing regulations do not specify which party bears the burden, simply stating that both parties may present evidence.  *See* 8 C.F.R. § 1003.19(d) (2025) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information . . . that is presented to him or her by the alien or the Service.").  The Supreme Court also has not clarified which party bears the burden.  *See* Sharon Shaji, Note, *The Due Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").  The Tenth Circuit has yet to decide this issue, and the circuits that have are split.  *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (applying the Supreme Court's *Mathews v. Eldridge*[8] test before holding that with respect to a petitioner who had been in custody for ten months, the government bore the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the

---

[8] The three factors a court must balance under the test articulated in *Mathews v. Eldridge* are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).

evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 851, 855–57 (2d Cir. 2020) (applying the *Mathews* test before holding that, after a showing of prolonged detention, the government bore the burden of proving danger and flight risk by clear and convincing evidence); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (holding that the detainee bears the burden of proof under § 1226(a)); *Miranda v. Garland*, 34 F.4th 338, 365–66 (4th Cir. 2022) (applying the *Matthews* test and holding that noncitizens bear the burden of proving by a preponderance of the evidence that they are neither a danger nor flight risk); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1193–94, 1203–14 (9th Cir. 2022) (agreeing with the reasoning of the Third and Fourth Circuits and holding that a petitioner was not entitled to a second bond hearing where the government bore the burden of proof).

Petitioner cites a recent decision in this district that shifted the burden to the government in a § 1226(a) bond proceeding.  *See* Doc. 13 at 20 (citing *Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025)).  In *Salazar*, after determining that a petitioner was subject to § 1226(a) rather than § 1225(b), the court examined whether the government should bear the burden of proof at a subsequent bond hearing.  2025 WL 2676729 at *6.  The court found that courts typically applied one of two tests, and that shifting the burden to the government was warranted under either.  *Id.*

The first test is from a case that Respondents principally cite on this issue, *L.G. v. Choate*, where the District Court of Colorado applied the three-factor test from *Mathews v. Eldrige* to determine whether burden shifting was appropriate.  744 F. Supp. 3d 1172 (D. Colo. 2024); *see* Doc. 5 at 16–17.  The first *Mathews* factor involves balancing the private interest affected by the official action.  2025 WL 2676729 at *6.  The court in *Salazar* found that factor weighed in favor of a petitioner who had been detained and separated from his family without a bond hearing for

less than three months.  *Id.* at *7.  Here, Petitioner has been detained for longer—over four months—during which he remains separate from his family, including his mother who has a history of cancer.  *See* Doc. 1 ¶¶ 30.  Petitioner also alleges he suffers from diabetes and claims to be in pain because CCCC staff have not always provided him with proper medication.  *Id.* Respondents cite *Choate* for support because the detention in that case was thirty months long. Doc. 5 at 17 (citing 744 F. Supp. 3d at 1178, 1181).  The court in *Salazar* rejected that argument, explaining that "the cases where the burden was shifted did not hinge on the duration of detention; rather, they independently assessed what due process requires, considering the length of detention among several other factors."  *Salazar*, 2025 WL 2676729 at *8.

The second *Mathews* factor involves the risk of erroneous deprivation of the petitioner's private interest through procedures used and the probable value of additional or different procedural safeguards.  *Id.* at *6.  The court in *Salazar* found that shifting the burden to the government at a bond hearing "likely will reduce the risk of the continuing erroneous deprivation of Petitioner's liberty interest."  *Id.* at *7.  In reaching that conclusion, the court focused on how the petitioner attempted to prove he was not a danger nor a flight risk by submitting evidence to the IJ, who then appeared to not consider the materials at all.  *Id.*  The same is true here. Petitioner described the evidence submitted to the immigration judge in support of bond, Doc. 1 ¶¶ 28, 30, but the judge "did not make any factual findings" and instead issued a one-paragraph order asserting that the judge lacked jurisdiction, *id.* ¶ 29.  As the court concluded in *Salazar*, requiring Respondents "to prove by clear and convincing evidence that Petitioner is a flight risk and/or a danger to the community ameliorates" concerns that Petitioner will continue to languish in custody "without meaningful consideration of these materials."  2025 WL 2676729 at *7.

The third *Mathews* factor focuses on "the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* at *6. The court in *Salazar* held that "where [the petitioner] has submitted materials attempting to show that he is neither a flight risk nor dangerous, . . . the Government has no interest in detaining Petitioner absent a showing by them that the Petitioner is, in fact, at risk of flight or a danger to the community." *Id.* at *7. As in *Salazar*, Petitioner here submitted evidence to the immigration judge that he is neither a flight risk nor dangerous, and the immigration judge did not make any findings that suggested he was a flight risk or dangerous. Doc. 1 ¶¶ 28–30. The court in *Salazar* further held that shifting the burden does not impose an unreasonable administrative or fiscal burden on the government, because it "has vast resources at its disposal to gather information about Petitioner's eligibility for bond." 2025 WL 2676729 at *8; *see also Velasco Lopez*, 978 F.3d at 853 (noting that a petitioner "was neither a flight risk nor a danger to the community but was unable to prove that was the case" while "the Government had substantial resources to deploy" in making that inquiry); *Hernandez-Lara*, 10 F. 4th at 31 (reasoning that "the government is generally far more able to meet the burden of proof on the question of danger than a detained noncitizen" and that noncitizens "face significant barriers to accessing" evidence related to flight risk "in the wake of their seizure and initial detention."); *Choate*, 744 F. Supp. 3d at 1185 (noting that "the government, and therefore the public, may save fiscal resources if detention is only used for noncitizens who are proven to be a flight risk or dangerous").

After concluding that burden-shifting was warranted under the first test, the court in *Salazar* also considered a second test that considered the "government's and the individual's respective interests, and then consider[ed] whether the existing process adequately balanced and protected the two." *Salazar*, 2025 WL 2676729 at *8 (citing *Diaz-Ceja v. McAleenan*, No. 19-

cv-00824-NYW, 2019 WL 2774211, at *9 (D. Colo. 2019)).  The court determined that the government's interest in detaining a petitioner is minimal absent a showing of flight risk or danger to the community, while a petitioner's "interest in liberty, on the other hand, is particularly strong after nearly three months of detention, separated from his family and community, without the opportunity for a meaningful bond hearing." *Id.*  Here, Petitioner has attempted to demonstrate that he is neither a flight risk nor a danger to the community, Doc. 1 ¶¶ 28–30, yet he remains "separated from his family and community, without the opportunity for a meaningful bond hearing" for longer than the petitioner in *Salazar*.  *See* 2025 WL 2676729 at *8.

Because the facts here are nearly identical to those in *Salazar*, except that Petitioner has been detained for longer, I recommend that the Court follow *Salazar* and order that the government bear the burden at a § 1226(a) bond hearing of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

C.   Whether Petitioner's Immediate Release is an Appropriate Remedy

One of Petitioner's prayers for relief is his "immediate release from ICE custody," or alternatively, "an immediate, constitutionally adequate individualized custody determination." Doc. 1 at 19.  Respondents argue that immediate release is not an appropriate remedy.  Doc. 5 at 17–18.  Petitioner did not directly respond to this argument in briefing, but at the November 3 hearing, his counsel argued that Petitioner's immediate release would guard against the danger that Petitioner will be unlawfully removed from the country before this case has been resolved. Doc. 20 ¶ VII.

In similar cases in this district, courts have ordered a prompt bond hearing but not the petitioner's immediate release.  *See Salazar*, 2025 WL 2676729, at *9 (ordering respondents to provide petitioner with a § 1226(a) bond hearing but only ordering immediate release if

respondents did not provide that bond hearing within seven days); *Cortez-Gonzalez*, 2:25-cv-00985-MLG-KK, Doc. 16 at 2 (ordering respondents to provide petitioner with a § 1226(a) bond hearing within seven days but not ordering immediate release).  In *Pastrana-Saigado*, the Court ordered Petitioner immediately released upon payment of a $3,500 bond, but only because the IJ already had determined that the petitioner was neither a danger nor a flight risk and had stated that he would order release on a $3,500 bond if he had authority to do so.  2:25-cv-950-MLG-LF, Doc. 24 at 2.  In line with these other cases, I recommend that the Court order Respondents to provide Petitioner with a bond hearing pursuant to § 1226(a) at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community within seven days of the Court's order.  However, I recommend that the Court only order Petitioner's immediate release if he is not afforded a bond hearing within seven days.

## IV.    Petitioner's Request for an Injunction Prohibiting His Transfer Outside of the District of New Mexico

While Petitioner has not moved for a temporary restraining order or a preliminary injunction, Petitioner did request in his prayers for relief that that the Court "[p]rohibit Petitioner's transfer outside the District of New Mexico during the pendency of this action."  Doc. 1 at 19.  Respondents did not address this request in briefing but argued against it during the November 3 hearing and provided case law in support of their position.

Respondents first argued that the Court lacks jurisdiction to enjoin Petitioner's transfer outside of the District, citing another district court case, *Edison C. F. v. Decker*, No. 20-15455 (SRC), 2021 WL 1997386 (D.N.J. May 19, 2021).  Doc. 20 ¶ V.  In *Edison*, a habeas petitioner in ICE custody moved for a temporary restraining order enjoining the government from transferring him to another facility.  2021 WL 1997386, at *6.  The court first noted "that it is extremely doubtful that [it] has jurisdiction to enjoin his transfer in this habeas matter," because "Congress

has provided the Government with considerable discretion in determining where to detain aliens pending removal or the outcome of removal proceedings." *Id.* The court cited several other cases within its district that found that there was no jurisdiction to enjoin the transfer of an alien in an immigration habeas matter. *Id.* However, the Court did "not reach the ultimate question of jurisdiction," because it determined that the petitioner failed to meet the requirements for a preliminary injunction. *Id.* At the November 3 hearing, counsel for Respondents acknowledged that other judges in the District of New Mexico have enjoined the government from transferring habeas petitioners outside of the District. Doc. 20 ¶ V(a).

In *Perez Parra v. Castro*, for example, the court granted petitioners' motion for a temporary restraining order enjoining their transfer outside of the District of New Mexico. 765 F. Supp. 3d 1241, 1242 (D.N.M. 2025). Petitioners cited the "transfers of Venezuelans depicting similar characteristics to Petitioners" and requested an injunction preventing their transfer to the U.S. Naval Base at Guantanamo Bay. *Id.* at 1243. At the time, the court could not say "that without this injunction it would not be jurisdictionally deprived to preside over the original writ of habeas corpus should petitioners be transferred," and thus found "an injunction is necessary to achieve the ends of justice entrusted to this Court." *Id.* The court further cited "many instances where district courts utilize[d] [their] inherent authority under the [All Writs Act] to retain jurisdiction and enjoin transfers." *Id.* at 1243–44 (citing *SEC v. Vision Communs.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 54 (D.D.C. 2004); *Lindstrom v. Graber*, 203 F.3d 470, 474–76 (7th Cir. 2000)). More recently, courts in this district have granted temporary restraining orders preventing petitioners' transfers outside of the District for purposes of safeguarding jurisdiction. *See K.S. v. Castro*, No. 2:25-cv-00756-WJ-JMR, Doc. 15 at 2–3 (D.N.M. Oct. 22, 2025) (granting a temporary restraining order enjoining petitioner's

transfer outside of the District of New Mexico after finding it "necessary and appropriate to exercise its inherent authority to enter an order in aid of its jurisdiction in this matter"); *Cortez-Gonzalez v. Noem*, No. 2:25-cv-00985-MLG-KK, Doc. 11 at 2 (granting a temporary restraining order enjoining petitioner's transfer "to any facility outside the District of New Mexico during the pendency of this habeas action"); *Gamez Lira v. Noem*, No. 1:25-cv-00855-WJ-KK, 2025 WL 2581710, at *2, 4–5 (D.N.M. Sept. 5, 2025) (stating that "[t]he Supreme Court has held that habeas relief is available only in the district of confinement" and finding a temporary restraining order enjoining petitioner's removal from the state of New Mexico necessary to retain jurisdiction) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)).

Respondents argued in the alternative that, even if the Court did have jurisdiction to enjoin Petitioner's transfer, Petitioner's transfer outside of the District will not affect the Court's jurisdiction over the matter.  Doc. 20 ¶ V.  Respondents cite *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).  In *Padilla*, the Supreme Court discussed a case where a petitioner initially filed suit against her immediate custodian in the Northern District of California, where she was in custody. *Id.* at 440 (citing *Ex parte Endo*, 323 U.S. 283 (1944)).  While both the petitioner and her custodian were located in the Northern District of California when the petition was filed, the petitioner was moved to Utah during the case.  *Id.*  Despite the fact that the petitioner's immediate physical custodian was no longer within the Northern District of California, the Court held that the District Court for the Northern District of California retained jurisdiction because at least one of the respondents was located in that district.  *Id.* at 440–41.  Put simply,

> *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

*Id.* at 441.  The *Endo* Court also noted that the issue was "not colored by any purpose to effectuate a removal in evasion of the habeas corpus proceedings," 323 U.S. at 304, suggesting that the holding may have been different had the respondents transferred the petitioner out of the district with the intent to disrupt the court's jurisdiction.

Courts in this district have cited *Padilla* for the proposition that they would lose jurisdiction over a petitioner's transfer outside of the District.  *See Gamez Lira*, 2025 WL 2581710, at *2; *K.S.*, No. 2:25-cv-00756-WJ-JMR, Doc. 15 at 2.  But Respondents argue that *Padilla* holds that the Court will *not* lose jurisdiction after a petitioner's transfer outside of the District so long as at least one of the respondents in control of Petitioner's custody remains in the District.  Doc. 20 ¶ V.  Applying this argument to the facts of this case, Respondent Dedos, as Warden of the Cibola County Correctional Center, is currently Petitioner's immediate custodian and was appropriately named in this suit.  Assuming for the sake of argument that Petitioner is transferred to another district during this case, Respondents argue that *Padilla* still authorizes this Court's jurisdiction over the case even though Warden Dedos would no longer be Petitioner's immediate custodian, because at least one of the other Respondents in this case—Respondents Noem, Bondi, or Anda-Ybarra—are subject to this Court's jurisdiction and can be ordered to effectuate any writ or order this Court issues regarding Petitioner's custody.  The Tenth Circuit, as have other circuits applying *Padilla*, agree with Respondents.  *See Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. 2015) (holding that "the District of Colorado acquired jurisdiction when [the petitioner] filed his habeas petition," and that his "transfer does not defeat that initial jurisdiction") (citing *Padilla*, 542 U.S. at 440–41); *see also Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445–47 (3d Cir. 2021) (holding that the District Court for the District of New Jersey retained jurisdiction over a habeas petitioner that was transferred outside of the district

during the pendency of the case); *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1238–39 (D.C. Cir. 2004) (reasoning that if a petitioner filed a petition in the Northern District of Ohio, naming a warden in Ohio as a respondent, "then under *Endo* that court would have retained jurisdiction over his petition notwithstanding [the petitioner's] later transfer to the federal penitentiary in South Carolina where he is now incarcerated"); *Ozturk v. Hyde*, 136 F.4th 382, 391–92 (2d Cir. 2025) (holding that an ICE detainee's "subsequent transfer to Louisiana [did not] strip the District of Vermont of habeas jurisdiction" after the petition had been validly filed in the District of Vermont).

I therefore recommend that the Court deny Petitioner's request that Respondents be enjoined from moving Petitioner outside of the District of New Mexico. Should Petitioner be transferred outside of the District, this Court will retain jurisdiction over the matter and will still be able to order any appropriate relief. *See Padilla*, 542 U.S. at 411. However, Petitioner may move for a temporary restraining order or preliminary injunction should he believe Respondents will transfer him for "any purpose to effectuate a removal in evasion of the habeas corpus proceedings." *Endo*, 323 U.S. at 304.

### V.    Costs and Reasonable Attorney's Fees Pursuant to the Equal Access to Justice Act

Petitioner's final prayer for relief asks the Court to award him costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Doc. 1 at 19. The EAJA provides that

> a judgment for costs . . . but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action.

28 U.S.C. § 2412(a)(1). The EAJA further provides that

> [e]xcept as otherwise specifically provided by statute, a court shall award to a
> prevailing party other than the United States fees and other expenses, in addition
> to any costs awarded pursuant to subsection (a), incurred by that party in any civil
> action (other than cases sounding in tort), including proceedings for judicial
> review of agency action, brought by or against the United States in any court
> having jurisdiction of that action, unless the court finds that the position of the
> United States was substantially justified or that special circumstances make an
> award unjust.

28 U.S.C. § 2412(d)(1)(A).  Very recently, the Tenth Circuit held that the EAJA "unambiguously

authorize[s] fees in habeas actions challenging immigration detention."  *Daley v. Ceja*, No. 24-

1191, — F.4th —, 2025 WL 3058588 (10th Cir. Nov. 3, 2025).

    While Respondents did not address Petitioner's request for attorney's fees in briefing,

they did argue against the request during the November 3 hearing.  During the hearing,

Respondents cited *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023), for the proposition that fees are

not recoverable by the prevailing party in a habeas corpus case.  Doc. 20 ¶ IV.  While

Respondents could not have known it at the time of the hearing, the Tenth Circuit rejected

*Barco*'s reasoning and holding that same day.  *Daley*, 2025 WL 3058588 at *9.  However,

Respondents did argue that even if the EAJA did apply to habeas proceedings, the substantial

justification exception applies because this is a novel area of law without Tenth Circuit authority

on point.  Doc. 20 ¶ IV.

    A fee award is required under the EAJA if "(1) plaintiff is a 'prevailing party'; (2) the

position of the United States was not 'substantially justified'; and (3) there are no special

circumstances that make an award of fees unjust."  *Hackett v. Barnhart*, 475 F.3d 1166, 1172

(10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)).  The EAJA requires a prevailing plaintiff

to, "within thirty days of final judgment in the action, submit to the court an application for fees

and other expenses" that includes an allegation "that the position of the United States was not

substantially justified."  28 U.S.C. § 2412(d)(1)(B).  The Tenth Circuit has stated that "once an

EAJA application is filed, the government is on notice . . . that it must justify both its position in any underlying administrative proceedings and its position in any subsequent district court litigation." *Hackett*, 475 F.3d at 1170.

The Court need not determine whether the government's position was substantially justified at this point. Should the Court grant the Petitioner relief, the Petitioner may file an EAJA application alleging that the government's position was not substantially justified. *See id.* Once that application is filed, the government will have the opportunity to demonstrate that its position in both the underlying immigration case and this present district court litigation was substantially justified. *See id.*

## CONCLUSION

For the forgoing reasons, I recommend that the Court DENY Respondent's Motion to Dismiss (Doc. 5) and GRANT IN PART and DENY IN PART the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1). I recommend that the Court grant the petition in that Respondents be ordered to provide Petitioner with an individualized bond hearing pursuant to § 1226(a), where the government shall bear the burden of justifying by clear and convincing evidence Petitioner's continued detention. I recommend that the Court order the bond hearing to be provided within seven days of its order, and that if Petitioner does not receive a bond hearing within seven days, that the Court order that Petitioner be immediately released from custody. I recommend that the Court deny the petition insofar as prohibiting Petitioner's transfer outside of the District of New Mexico during the pendency of this action.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id*. In other words, if no objections are filed, no appellate review will be allowed.

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE